1

2

3

4

5

6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7

8

9

10

11

12

13

14

15

UNITED STATES OF AMERICA,

Plaintiff,

v.

$40,200.00 IN UNITED STATES CURRENCY,

Defendant.

ERIK L. CHRISTENSEN,

Claimant.

Case No. 3:14-CV-0229-LRH (VPC)

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

16

17

18

19

20

21

22

23

24

25

 This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  On March 30, 3015, this court issued an order to show cause why a default judgment should not be entered against claimant Erik L. Christensen ("claimant" or "Mr. Christensen") for failing to comply with this court's order in accordance with Local Rule IA 4-1(d) and why the amended answer should not be stricken and default judgment be entered in accordance with Fed.R.Civ.P. 37(b)(2)(A)(iii) (#47).[1]  Claimant filed a response (#49), and plaintiff, the United States of America (the "government") filed a reply in support of the order to show cause (#50).

26

27

28

 [1]The court notes that the order to show cause (#47) referred only to Fed.R.Civ.P. 37(b)(2)(A)(iii), and through inadvertence, omitted reference to Fed.R.Civ.P. 37(b)(2)(A)(vi). This court nevertheless considers sanctions under both subsection (iii) and (vi).  The claimant acknowledged in his response to the order show cause, that he had actual notice that sanctions were sought for a default judgment and for and order striking the amended answer.  *See* Claimants (sic) response to order to show cause (#49, p. 1, lines 13-18; p. 5, lines 7-9).

I.    **Procedural History**

The government brought an *in rem* civil forfeiture action of the defendant currency totaling $40,200 that local law enforcement in Washoe County seized from the claimant in November 2013 following a routine traffic stop (#1).  Robert Lindsay, Esq., counsel for claimant ("Mr. Lindsay"), filed an answer (#9) and a claim (#13) to the complaint on behalf of the claimant, and then he later filed an amended answer (#14).  This court issued a discovery plan and scheduling order, and it set the discovery deadline for January 15, 2015 (#22).

In his amended answer, claimant stated the following:

1. The seized funds should be returned to him because the funds are "the legitimate product of business sales of the 'Whip Trimmer'" (#9, p. 3, lines 11-12);

2. The seized funds should be returned to him because the funds "were from sales of a machine, "Whip Trimmer," which ERIK CHRISTENSEN invented, manufactured, and sold (#9, p. 3, lines 17-18); and

3. "The business records, order forms, and literature taken from [Christensen's] car on November 23, 2014 (sic) by law enforcement reflect legal and legitimate business records for the 'Whip Trimmer' sales that ERIK CHRISTENSEN was conducting" (#9, p. 3, lines 27-28).

In another filing with the court, Christensen stated at the time of the seizure of the currency, he had with him "business cards," which bore his name and the Whip Trimmer name, as well as the business telephone number (#17, p. 7).  He also stated that the seized funds were the "legitimate earnings from the sale of the Whip Trimmer by Erik Christensen." *Id.* at 8.  He characterized the November 2013 travel as a "business trip," and he attached a document, which included his own characterization of "Occupation – Business Owner" and his own description of "Business Name – Whip Trimmer." *Id.* at 9; #17-1, p.4; #17-1, p.2.

A.    *The Disputed Discovery*

On August 22, 2014, the government propounded twenty interrogatories and five requests for production, all of which concerned requests for employment information, claimant's

- 2 -

occupation, information about the Whip Trimmer business, bank and business records, his travel history, and other topics generally related to the forfeiture complaint and amended answer (#24; Addington Decl.). Although the parties agreed to a one-week extension for responses to the discovery, the United States did not receive the responses until November 14, 2014, nearly two months after the extended deadline. *Id.*; Addington Decl. Apart from being untimely, counsel for the United States found the responses incomplete, evasive, and otherwise deficient. Beginning November 19, 2014, counsel for the United States undertook efforts to meet and confer with Mr. Lindsay to resolve the dispute by sending a detailed email outlining the deficiencies with the responses. *Id.*, Addington. Decl. Mr. Lindsay did not respond, so government counsel left messages for him, and the two finally spoke on November 25, 2015. *Id.*, Addington Decl. Mr. Lindsay acknowledged the responses were deficient and agreed to speak with the claimant the following week. *Id.*, Addington Decl. Email exchanges followed, and counsel for the parties once again discussed the disputed discovery on December 5, 2015. *Id.*, Addington Decl. Mr. Lindsay agreed to notify government counsel on December 5, 2014 whether supplemental responses would be forthcoming, but there were no further communications. *Id.*, Addington Decl. Government counsel continued to call and email Mr. Lindsay, and on December 9, 2014, Mr. Lindsay reported that he had left a message with claimant and would advise whether supplemental responses would be provided. *Id.*, Addington Decl. Government counsel once again had no response from Mr. Lindsay, and in light of the fast-approaching discovery deadline of January 15, 2015, government counsel filed a motion to compel (#24).

Claimant responded to the motion to compel by filing a document styled as response, but it was actually a supplemental response to the disputed discovery (#27). In fact, claimant proffered no points and authorities at all; rather, he submitted supplemental discovery responses, presumably aimed at correcting the deficiencies in initial responses. In reply, government counsel noted the following: (1) the response failed to comply with Local Rule 7-2(d) because it contained no points and authorities; (2) the supplemental answers to interrogatories were

- 3 -

unverified; and, (3) the responses simply did not cure the deficiencies outlined in detail in November (#28).  Government counsel also asked for a hearing (#29), and one was set for February 13, 2015 (#30).

### B.  February 13, 2015 Hearing

At the February 13, 2015 hearing, the court granted the government's motion to compel and ordered claimant to provide supplemental discovery by the close of the business day on Friday, February 20, 2015 (#31).  The court also noted that claimant had waived his right to interpose objections to the discovery, and it set a compliance hearing for February 27, 2015.  *Id.* Mr. Christensen was ordered to be present in person for that hearing; however, if the supplemental discovery was provided and deemed satisfactory, the parties could request that the hearing be vacated.  *Id.*  Finally, while the court awarded attorney's fees and costs to the government for the preparation of the motion to compel, it deferred the filing of a statement of fees and costs until the discovery dispute was resolved.  *Id.*

The government filed a status report following the February 13th hearing and advised that the claimant provided no supplemental responses, that there had been no communications from the claimant's attorney, and that the discovery responses remained deficient as earlier reported (#32).  The court then proceeded with the February 27, 2015 hearing, at which the dispute became even more complicated.

### C.  February 27, 2015 Hearing

Both Mr. Christensen and Mr. Lindsay were present for this hearing, as well as government counsel.  Mr. Lindsay began by telling the court that he and his client had developed an irreconcilable conflict, and Mr. Christensen agreed (#34).  The court granted Mr. Lindsay's oral motion to withdraw as counsel, and Mr. Christensen advised he would appear in *pro se*.  *Id.* Mr. Christensen told the court that he had all of the documents responsive to the discovery requests; therefore, the court took a recess to allow Mr. Christensen and government's counsel to meet and confer.  *Id.*  After the recess, government counsel told the court that Mr. Christensen

- 4 -

intended to retain new counsel within the next two weeks and that Mr. Christensen intended to provide the documents to the government as soon as possible. *Id.*

The court set a hearing for March 27, 2015, directed the parties to file joint or separate status reports before the hearing, and ordered Mr. Christensen's new attorney be present at that hearing. *Id.* If Mr. Christensen did not retain new counsel, the court ordered him to be present personally for that hearing to represent himself. *Id.*[2] Finally, the court ordered the government to file a statement of attorney's fees and costs, and allowed Mr. Christensen an opportunity to respond. *Id.*

### D.    *March 27, 2015 Hearing*

In advance of the March 27th hearing, the government filed a discovery status report as ordered by the court (#44). The government recounted the recently filed motions to dismiss and motion to strike, and reported there had been no communication about the claimant's possible substitution of counsel. *Id.* The government also claimed that Mr. Christensen continued to be deceptive in his discovery responses as to interrogatory nos. 8 and 9 and request for production no. 3. *Id.* The government set out Mr. Christensen's responses and commented:

> Christensen cannot be allowed to assert a claim in this action based on his representations that he conducted a business and earned income through his invention, manufacture, and sale of the "Whip Trimmer" device and then avoid his discovery obligations by asserting that he neither owned nor operated any business associated with the manufacture, distribution, or sale of the Whip Trimmer device. It is the United States' view that Christensen's current discovery responses represent a continuation of his deliberate, willful, and persistent disregard for his discovery obligations and this Court's orders. Christensen's litigation conduct merits imposition of further sanctions pursuant to Rule 37(d)(3), including an order to show cause why his claim and

---

[2]Mr. Christensen did not obtain new counsel; however, he filed a motion to dismiss the forfeiture proceedings (#37), which the District Court denied (#53) along with the identical earlier filed motion to dismiss (#33). Mr. Christensen also filed a motion to strike his earlier-filed response to motion to compel (#27) on the ground that he had no knowledge that Mr. Lindsay filed it on his behalf. The court denied the motion (#48).

1
2

answer should not be stricken and default entered or other relief permissible under Rule 37(b)(2)(A)(i)–(vii).

3    *Id*. at pages 4-5.

4    Mr. Christensen, appearing in *pro se*, filed nothing prior to the hearing. The court recited
5    the chronology of this discovery dispute and advised it would issue an order to show cause why a
6    default judgment should not be entered against Mr. Christensen for failing to comply with this
7    court's order (#31) pursuant Local Rule IA 4-1(d) and why the amended answer should not be
8    stricken and a default judgment be entered pursuant to Fed.R.Civ.P. 37(b)(2)(A)(iii) (#46). The
9    court set a briefing schedule for the order to show cause, which was issued on March 30, 2015
10    (#47).

11    **E.    *Show Cause Briefs***

12    In response to the order to show cause, Mr. Christensen filed a response that essentially
13    summarized the discovery responses he had supplied to date and concluded that he had
14    responded to the best of his ability (#49). The response was not verified nor was a declaration
15    provided to attest to the truthfulness of his statements. The government responded with a
16    chronology of its repeated attempts to obtain discovery responses and noted the contradictory
17    representations Mr. Christensen made to the court throughout the case (#50). Based upon Mr.
18    Christensen's consistent position that he not be required to comply with court orders and that he
19    be allowed to disregard discovery obligations, the government asked for an order striking the
20    amended answer, that a corresponding default judgment of forfeiture be entered, and that Mr.
21    Christensen be ordered to pay the government's attorney's fees in the amount of $2,368.00. *Id.*

22    This report and recommendation now follows.

23    **II.    Discussion and Analysis**

24    This case is proceeding pursuant to the Civil Asset Forfeiture Reform Act of 2000, 18
25    U.S.C. § 983, and it governs all *in rem* civil forfeiture proceedings commenced on or after
26    August 23, 2000. See *United States v. Approximately $1.67 Million (U.S.) In Cash*, 513 F.3d
27    991, 998 (9th Circuit. 2008).

28

As the Ninth Circuit has held, the Federal Rules of Civil Procedure apply to civil forfeiture actions to the extent they are not inconsistent with the Supplemental Rules. *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 635 (9th Cir. 2012); *United States v. 2,164 Watches, More or Less, Bearing a Registered Trademark of Guess?, Inc.* 366 F.3d 767, 771-72 (9th Cir. 2004). That is, where the Supplemental Rules "are silent" on a particular question, the Federal Rules apply. *2,164 Watches*, 366 F.3d at 772. Other circuits share this approach. *See United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 619 (7th Cir. 2015); *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 149 (3d Cir. 2003).

Because Rule 37 is not inconsistent with the Supplemental Rules, federal district courts have relied on Rule 37 to impose sanctions, including default judgment, for gross abuse of the discovery process. *See United States v. $4,656,085.10 in Bank Funds*, No. SACV 12-0219-DOC, 2014 WL 5393858, at *3-6 (C.D. Cal. Sept. 15, 2014) (striking the claim and granting default judgment); *United States v. $19,000 in U.S. Currency*, No. 10-03009, 2012 WL 5286888, at *1-2 (C.D. Ill. Oct. 23, 2012) (same); *United States v. $9,781.41 Formerly on Deposit at Man Financial, Inc.*, No. 07 Civ. 6224, 2009 WL 1684695, at *3-5 (S.D.N.Y. June 16, 2009) ("Rule 37 sanctions are available in civil forfeiture actions."); *United States v. Proceeds of Drug Trafficking Transferred to Certain Foreign Bank Accounts*, 252 F.R.D. 60, 63 (D.D.C. 2008) (reasoning that the circumstances merited striking the claimant's reply and dismissing his claim under Rule 37); *United States v. U.S. Currency in the Amount of $600,341.00*, 240 F.R.D. 59, 62-63 (E.D.N.Y. 2007) (granting the Government's Rule 37 motion for dismissal).

Rule 37(b)(2)(A)(i-vii) of the Fed.R.Civ.P. outlines possible sanctions a court may impose for a party's failure to comply with a court order:

> (2) *Sanctions Sought in the District Where the Action is Pending.*
>
> (A) *For Not Obeying a Discovery Order.* If a party of a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

- 7 -

(i)    Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)   Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)  Striking pleadings in whole or in part;

(iv)   Staying further proceedings until the order is obeyed;

(v)    Dismissing the action or proceeding in whole or in part;

(vi)   Rendering a default judgment against the disobedient party; or

(vii)  Treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

In this case, the government asks for the extreme sanctions of striking the amended answer and entering a default judgment against Mr. Christensen pursuant to Fed.R.Civ.P. 37(b)(2)(A)(iii) and (vi).  Because such sanctions against a defendant (or claimant) are very severe, "[o]nly willfulness, bad faith, and fault" justify such sanctions. *Connecticut General Life Ins. Co. v. New Images of Beverly Hills,* 482 F.3d 1091, 1096 (9th. Cir. 2007) (citing *Jorgensen v. Cassiday,* 320 F.3d 906, 912 (9th. Cir. 2003).  The Ninth Circuit has created a five-part test, with three subparts to the fifth part, to decide whether  case-dispositive sanctions under Rule 37(b)(2) are warranted: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  *Connecticut General,* 482 F.3d 1091,1096 (9th Cir. 2007); *Jorgensen v. Cassiday,* 320 F.3d 906, 912 (9th Cir. 2003) (quoting *Malone v. U.S. Postal Serv.,* 833 F.2d 128, 130 (9th Cir. 1987)."The subparts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions."  *Connecticut General,* 482 F.3d 1091, 1096; *Valley Eng'rs. v. Electric Eng'g Co.,* 158 F.3d 1051, 1057 (9th Cir. 1998).  This is not a mechanical test; rather, it provides a guide to the district court consider what to do, as opposed to "a set of conditions

- 8 -

precedent for sanctions or a script that the district court must follow." *Connecticut General*, 482 F.3d at 1095. The court now turns to the *Malone* factors.

### A.    *The public's interest in expeditious resolution of litigation*

The government filed this *in rem* forfeiture action in April 2014 (#1), claimant filed his answer (#7) in May 2014, followed by a notice of claim (#13) and an amended answer (#14), both of which were filed in June 2014. The court held a case management conference on July 28, 2014, and entered a scheduling order, which set a discovery deadline of January 15, 2015 (#22). In August, the government sent out written discovery concerning the allegations and denials in the amended answer. Claimant did not respond to the discovery requests until two months after an agreed-upon deadline, and the government felt the responses were incomplete and evasive. Government counsel immediately embarked on the meet-and-confer process, which went on for several weeks without success. Facing the impending discovery deadline, government counsel filed a motion to compel the discovery to protect his client's rights. The response, filed in late December, did not include points and authorities, and the purported discovery responses offered in lieu of an actual response were of no use, as they were not verified and did not cure the original deficiencies of the response. No doubt frustrated, government counsel requested a hearing, which was set for February 13, 2015, six months after the government sent the discovery requests to claimant.

The court granted the motion to compel, awarded attorney's fees to the government, but deferred briefing on the amount; instead, the court ordered claimant to provide the disputed discovery responses within five days and set a compliance hearing for February 27, 2015 (#31).

If claimant did not comply, the court ordered that Mr. Christensen appear personally for the hearing, but also noted that if the discovery responses were provided, the parties could ask the court to vacate the hearing. *Id.* In response, claimant did nothing – there was no further communication with government counsel, and there were no supplemental discovery responses (#32).

- 9 -

At the February 27, 2015 hearing, the claimant and his attorney basically blamed one another for the failure to respond to the discovery initially and thereafter. It was abundantly clear that the attorney-client relationship had deteriorated to the point the court granted the oral motion of claimant's counsel to withdraw (#34). Since Mr. Christensen was now acting in *pro se*, the court gave him an opportunity to retain new counsel, to resolve the discovery dispute, and set yet another hearing for March 27, 2015. *Id.*

The March 27, 2015 hearing was the third hearing about this discovery dispute. The claimant filed nothing in anticipation of the hearing, but the government reported that Mr. Christensen continued to be evasive and deceptive in his responses (#44). At this point, the court ordered Mr. Christensen to show cause why he should be not sanctioned pursuant to Fed.R.Civ.P. 37(b)(2) and set a briefing schedule, which resulted in this report and recommendation (#47).

The record demonstrates that despite the government's efforts to obtain discovery, the claimant repeatedly ignored those requests, failed to participate in a meaningful way, and simply delayed and delayed the discovery process for months on end. The court attempted to assist the parties by scheduling prompt hearings to assist in resolving this dispute, to no avail.

This factor weighs in favor of the government.

**B.     *The court's need to manage its dockets***

This court's practice is to convene a case management conference with the parties shortly after the answer is filed to discuss, among other things, the discovery plan and scheduling order, to inquire about particular issues of concern to the parties in the case itself, to offer an early settlement conference if requested, and to otherwise become familiar with counsel and the case. This court is also amenable to resolving discovery disputes at expedited hearings and in assisting the parties in complying with deadlines. This oversight of the case educates the court at the early stages about the case, and it affords counsel an opportunity to work efficiently and cost effectively prior to the discovery deadline. The court needs to manage civil cases so that the parties are best served through a process that is flexible, accessible, and saves time and money.

- 10 -

While the court needs to manage its docket, the beneficiaries of this oversight are the parties who presumably want to resolve their lawsuit sooner rather than later.

This factor is neutral.

### C.       The risk of prejudice to the party seeking sanctions

In this *in rem* civil forfeiture proceeding, the government was entitled to conduct standard discovery about the facts alleged in the claimant's amended answer.  The government sought the discovery promptly, gave one extension, and then tried in vain to obtain the claimant's cooperation to complete this phase of the case.  The prejudice to the government is obvious: if it has incomplete, evasive answers going to the very substance of the claimant's position that he is entitled to the return of the disputed funds, the case cannot proceed.  This is exactly what occurred here.

This factor favors the government.

### D.       The public policy favoring disposition of cases on their merits

It is axiomatic that cases should be disposed of in their merits; the problem here is that the claimant was evasive, posited completely contradictory positions in his amended answer and his responses to the discovery, and then claimant and his attorney blamed one another for all that went wrong in this case.  Despite all of that, the discovery dispute was never resolved to the satisfaction of the government or the court.

This factor favors the government.

### E.       The availability of less drastic sanctions

#### 1)       Whether the court considered lesser sanctions

Like most courts, this court is loathe to issue sanctions, much less case-ending sanctions. For that reason, the court held three hearings to assist the parties in resolving the discovery dispute.  However, what seemed at first to be an innocuous dispute turned into a situation in which the claimant's counsel repeatedly failed to communicate with government counsel, and he allowed deadlines to pass and ignored Local Rules of Practice. When claimant and his attorney parted company, the court allowed the claimant to find a new attorney and offered him yet

another opportunity to resolve the dispute. The court granted the government's motion to compel but deferred consideration of attorney's fees in the hope that the parties would resolve the dispute. Through it all, the claimant remained either uninformed or unfazed.

This sub-part favors the government.

> 2) *Whether the court tried lesser sanctions*

The court did so, as recounted above.

This factor favors the government.

> 3) *Whether the court warned the recalcitrant party*
> *about the possibility of case-dispositive sanctions*

Throughout this process, the court warned claimant and his counsel that sanctions would be issued if they did not provide adequate discovery responses. Having earlier granted the government's motion to compel and request for attorney's fees, claimant's conduct left the court no choice but to issue an order to show cause why sanctions should not be imposed pursuant to Fed.R.Civ.P. 37(b), which included case-ending sanctions. Claimant did nothing to rectify the deficiencies in his responses and instead filed a statement claiming that this was a truthful recitation of the following:

> a. He has not been employed in any capacity since January 1, 2012;
>
> b. He has not received any compensation for any business entity since prior to January 1, 2012;
>
> c. He has never been an officer of the Whip Trimmer Company;
>
> d. He was entrusted with possession of property owned by the Whip Trimmer Company on a consignment basis;
>
> e. He has no paperwork or documentation of any business operated by the claimant;
>
> f. The $40,200 was derived from legitimate sales of a business that is not and has never been owned or operated by the claimant;

- 12 -

1
2
3          g.      He has received no compensation for this assistance
   in the manufacture, distribution, or sale of the Whip Trimmer from
4   January 1, 2012 to the present;

5          i.      He has provided all documents in his possession
   pertaining to the government's request for production of
6   documents;

7          j.      He never stated that he conducted a business; and
8
9          k.      He has not earned income through the invention,
   manufacture, and sale of the Whip Trimmer device.

10      Claimant did not provide a declaration or an affidavit attesting to the truthfulness of his

11   statement (#49), and the statement completely contradicts claimant's answer and amended

12   answer (#14).

13      This factor favors the government.

14   **III.   Conclusion**

15      "The most critical factor to be considered in case-dispositive sanctions is whether 'a

16   party's discovery violations make it impossible for a court to be confident that the parties will

17   ever have access to the true facts.'" *Connecticut General*, 482 F.3d at 1097 (citing *Valley Eng'rs*

18   *v. Electric Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998). Mr. Christensen's pattern of failing

19   to respond to basic discovery that goes to the core of his defense make it impossible for the

20   government to proceed or for the court to consider a dispositive motion or preside over a trial.

21   The court imposed lesser sanctions and offered Mr. Christensen multiple opportunities to

22   properly respond to discovery to no avail.  Therefore, the court concludes that case-ending

23   sanctions are proper in this case.

24      The parties are advised:

25      1.          Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules

26                  of Practice, the parties may file specific written objections to this Report

27                  and Recommendation within fourteen days of receipt.  These objections

28

- 13 -

should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.     <u>Recommendation</u>

**IT IS THEREFORE RECOMMENDED** that the District Court strike claimant Erik L. Christensen's amended answer (#14) and enter default judgment of forfeiture in accordance with Fed.R.Civ.P. 37(b)(2)(A)(iii) and (vi).

Dated:  June 22, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

- 14 -